Dixon *v.* Buck.

[MONROE GENERAL TERM, March 7, 1864. *Welles, J. C. Smith* and *Johnson,* Justices.] .

---

## Dixon *vs.* Buck, Sheriff &c.

By subdivision 6, of section 366 of the code, as amended in 1862, either party may move for a new trial in the county court, on a case or exceptions, either before or after judgment has been entered. But he is not obliged to do so, before appealing to the supreme court.

M. being indebted to D. turned out to him a quantity of marble, not then in the actual custody of M. but upon the premises of third persons and in their immediate custody and possession, some of the articles being cumbersome, with the understanding that D. should sell the property, and apply the avails on M.'s indebtedness. M. delivered to D. a schedule of the pieces of marble, and D. arranged with the persons having the property in charge to keep and take care of it for him. *Held* that this was an absolute and unconditional sale; and that, under the circumstances, there was a sufficient *delivery* to take the case out of the statute.

APPEAL from a judgment of the county court of Cayuga county. The action originated in a justice's court. In June, 1860, F. T. Munson was indebted to the plaintiff for services as attorney, disbursements, &c. in the sum of $200 or $300. About that time Munson turned out to Dixon a quantity of marble owned by him; under the agreement that Dixon should sell it and apply the avails on his indebtedness. Munson delivered to Dixon a written schedule of the pieces, which were in three different places, in the custody of other persons. The plaintiff testified that Munson went with him, and showed him the marble in Belcher's shop. Some of the pieces had slipped down, and Munson assisted the plaintiff in straightening them up. The plaintiff then went to A. L. Smith's shop, and made an arrangement with him, as well as with Whiting and Belcher, to let the marble remain where it was; wrote his name on the marble with a pencil, and changed the position of several of the pieces, set them up, and moved them into a corner. This was done the same day the schedule was delivered, and before any levy. The marble consisted of head stones and foot stones, and monuments, weighing three thousand four hundred pounds, two thousand four hundred pounds, seven hundred or eight hundred pounds, five hundred and fifty pounds, &c. respectively. The defendant, as sheriff, by his deputy, sold the property on a judgment and execution against Munson, on the 13th of July, 1862. This action was brought to recover the value of the property and was tried before the justice in July, 1862, and judgment rendered for the plaintiff for $150. The defendant appealed to the Cayuga county court, where the action was tried, and the plaintiff recovered a verdict of $174.78.

*Cox & Avery,* for the appellant.

*H. V. Howland,* for the respondent.

---

Dixon *v.* Buck.

---

*By the Court,* JOHNSON, J.   The respondent's counsel
objects, preliminarily, that the case or exceptions made and ·
filed in the court below, are not properly before us for exam-
ination on this appeal.   His position is that before the case
or exceptions can be made part of the judgment roll, in the
county court, there must be a notice for a new trial in that
court on such case or exceptions.   I do not think this objec-
tion is well taken.   By subdivision 6, of section 366 of the
code, as amended in 1862, either party may move for a new
trial in that court on a case or exceptions, either before or
after judgment has been entered.   But I do not think he is
obliged to do so before appealing to this court.

The right of appeal is given by section 348, and the appeal
is from the judgment of the county court.   Upon such ap-
peal being perfected, the clerk, with whom the notice is filed,
is to transmit to the appellate court a certified copy of the
notice of appeal and of the judgment roll, if the appeal is
from the judgment; or if it is from an order, a certified copy
of such order and of the papers upon which the order was
granted.   (*Code,* § 328.)   All the provisions of the code for
receiving the verdict of a jury, exceptions to the decision of
the court, making and settling case and exceptions, motions
for new trials and making up the judgment roll in the
supreme court, are made applicable to trials on appeal in
the county court.   (*Sec.* 366, *sub.* 6, *as amended in* 1862.)
By section ·281 the judgment roll, in the supreme court, in
all cases where the complaint has been answered, is consti-
tuted of the summons, pleadings, copy of the judgment, with
any verdict or report, the offer of the defendant, exceptions,
case, and all orders and papers in any way involving the
merits and necessarily affecting the judgment.   The case or
exceptions, therefore, as settled and filed, is made part of
the judgment roll.   As the case is embraced in the return
of the clerk, I think we are to presume that it has been
properly attached and filed, with the other papers consti-
tuting the judgment roll.   The certificate of the clerk does

not show affirmatively whether it has been attached and filed or not, nor is it necessary that it should. The presumption is that it has been done correctly. It does appear that it is on file. If it is not part of the judgment roll, the clerk, I suppose, had no right to return it on this appeal. But the respondent, instead of this preliminary objection, should have moved to strike the case from the return on affidavits showing what the fact is in regard to it, or to have the return amended so as to contain the roll only. As the matter now stands, the case or exceptions is properly before us on the appeal.

Upon the merits I am of the opinion that the case was properly disposed of in the county court. From the evidence, the sale was clearly an absolute and unconditional one. And there was a sufficient delivery to take the case out of the statute. The articles were cumbersome and not at the time in the actual custody of the vendor, but upon the premises and in the immediate custody and possession of third persons. They were turned out to the plaintiff where they lay, and he made arrangements with the persons who had them in charge to keep and take care of them for him. This is clearly sufficient, under the circumstances, to constitute a valid delivery and change of possession.

There is nothing, that I can see, in the nature either of a pledge or mortgage about the transaction. The property was not turned out as collateral security, but it was simply a sale. There was nothing in the contract, express or implied, giving the vendor a right to redeem by paying the debt. It was taken to apply on a debt, which the vendor owed the plaintiff, and the evident intention was that the title should vest in the purchaser. The price, it is true, was not absolutely fixed, but a standard or criterion was agreed upon, by which it should be fixed, and the amount realized by that criterion was the amount to be applied in part satisfaction of the debt. That is fixing the price sufficiently to make a sale valid. The moment the property was delivered to, and accepted by,

Dixon *v.* Buck.

the plaintiff, his debt against the vendor was paid and satisfied to the precise extent of the amount which the plaintiff should thereafter realize from a sale of the articles. The amount or extent of the satisfaction, alone, remained to be ascertained, and that was to be done by the plaintiff's sale of the property thereafter. The question of fraud in the sale was fully submitted to the jury, and has been conclusively determined by them. The sale by the defendant's deputy was therefore wrongful as against the plaintiff, and the action was well brought.

The court was, however, in error in rejecting the evidence offered of the amount at which the property sold at the sheriff's sale, as some evidence of its value. The offer was to show that the sale was fairly conducted; that several bidders were present, and that the property sold for $75.

The court of appeals, in *Campbell* v. *Woodworth,* (20 *N. Y. Rep.* 499,) reversed a judgment and granted a new trial for the rejection of evidence of a precisely similar character. In that case, as in this, other evidence had been given, by merchants and other persons acquainted with the value of goods of the description of those sold, but the court held that the evidence offered, had it been received, would have afforded some evidence for the consideration of the jury, of the value of the property, and reversed the judgment on that ground alone.

Upon this sole ground, this judgment must be reversed and a new trial granted, with costs to abide the event.

[Monroe General Term, March 7, 1864. *Welles, J. C. Smith* and *Johnson,* Justices.]